# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Morton Denlow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 3227 | **DATE** | 5/28/2002 |
| **CASE TITLE** | Greer vs. Barnhart | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and order. Claimant's motion for summary judgment [16-1] is denied and the Commissioner's motion for summary judgement [19-1] is granted and the Commissioner's decision finding Claimant not disabled is affirmed.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| ✓ | Notices mailed by judge's staff. | MAY 29 2002 date docketed | |
| | Notified counsel by telephone. | | |
| | Docketing to mail notices. | docketing deputy initials | |
| | Mail AO 450 form. | | |
| | Copy to judge/magistrate judge. | 5/28/2002 date mailed notice | |
| DK | courtroom deputy's initials | DK mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED
MAY 2 9 2002

| | |
|---|---|
| JOHN GREER, | ) |
|       Plaintiff, | ) |
| | ) Case No. 01 C 3227 |
| v. | ) |
| JO ANNE B. BARNHART, | ) |
| Commissioner of Social Security, | ) Magistrate Judge Morton Denlow |
|       Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff John Greer ("Claimant" or "Greer") seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner"), Jo Anne Barnhart, denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act, Titles II and XVI, 42 U.S.C. §§ 416, 423, 1381a. Greer claims the Commissioner's decision to deny him benefits should be reversed because it is contrary to law and not supported by substantial evidence. Both parties now move for summary judgment. For the reasons stated herein, this Court affirms the Commissioner's decision, denies Greer's motion for summary judgment, and grants the Commissioner's motion for summary judgment.

### I. RELEVANT FACTS

Greer was born on May 15, 1955. (R. 79). He graduated from high school and received vocational training in home entertainment repair. (R. 31, 128). He stopped working

in December 1997 after he was terminated for engaging in a dispute with a customer. (R. 33, 38-39). Greer's previous work experience included appliance repairman, unskilled laborer, warehouseman, and flooring installer. (R. 67-68, 146).

A.  **Greer's Hearing Testimony**

On March 31, 1999, Greer testified before Administrative Law Judge ("ALJ") Robert T. Karmgard at a Social Security Administration ("SSA") Hearing. Greer testified he was unable to work since December 18, 1997 because of pain in his hips, knees, ankle, back, and shoulders. However, Greer also explained he was terminated in December 1997 from Victory Distributors for engaging in a dispute with a customer. (R. 38-39).

Greer underwent surgery in 1969 and had pins put in both hips. (R. 39). Over the past 25 years, he claimed he experiences daily pain in both hips and his left hip slips out of the joint. (R. 47). He received cortisone shots in both hips five years ago, but that only alleviated the pain for a couple of days. (R. 48). Greer has experienced pain in his knees since 1985 or 1986 and wears an elastic brace on his right knee and a styrofoam brace on his left knee. (R. 48-49). Greer also expressed some difficulty with his right ankle. (R. 55). Greer asserted his back pain stems from his hip and knee problems and started in 1986 or 1987. (R. 58). Lastly, Greer claimed, in 1992 or 1993, he believes he dislocated both shoulders because he sometimes cannot raise his arms over his head; however, he has not discussed this alleged problem with his doctor. (R. 39-40).

Cook County Hospital ("CCH") gave him a cane in March 1998. (R. 46). Greer can

2

walk one to two blocks with the cane and a half a block to a block without the cane. (R. 57-58). He had no trouble taking the train to the hearing, but had to stop four times along the way because the walking caused him pain. (R. 51). Greer claimed sitting in one place also causes him pain. (R. 52).

At the time of the hearing, Greer was five feet, six and one half inches tall and weighed between 225 and 230 pounds. (R. 32). He has high blood pressure and takes medication to control it. (R. 50). The high blood pressure causes him headaches lasting all day, five to six times a week. (*Id.*). Because of his high blood pressure, his doctors told him to refrain from alcohol. (R. 56). He has trouble sleeping because of the pain and was prescribed Amitriptyline which makes him drowsy, yet over the past two months, it was not working. (R. 53). His other medications do not make him drowsy. (R. 63).

On a typical day, Greer watches television and may sit on the porch. (R. 46). His landlord does the cleaning, cooking, and grocery shopping, although, at times he accompanies her to the store and does his own cooking. (R. 54-55). He carries his own groceries and the heaviest item he can lift is a half gallon of milk. (R. 59-60).

**B.  Medical Evidence**

The medical evidence in this case consists of records from Greer's visits to CCH and Fantus Clinic, reports of consulting physicians A.P. Knott and Alvaro Rios, the report of Radiologist Samuel T. Gerber, reports of non-examining reviewing physicians F. Paul LaFata and Charles Kenney, and the musculoskeletal defects or fractures questionnaire completed

3

by Dr. Kopplin.

### 1. Cook County Hospital

On March 8, 1996, Greer was diagnosed with bilateral hip osteoarthritis and hypertension and given medication after Greer was seen at CCH Emergency Room with complaints of bilateral hip pain. (R. 156-57). While Greer was tender in both hips, his hip range of motion was normal. (R. 157). On July 1, 1996, Greer was evaluated at Fantus Health Center and reported "my hips need fixing bad." (R. 155). The examining doctor determined Greer's hip range of motion was decreased, ordered x-rays, and advised him to lose weight. (R. 155). In October 1996, the doctor reported Plaintiff's hip x-rays showed bilateral degenerative joint disease. (R. 153). Greer was scheduled for surgery on May 20, 1997; however, on May 5 he cancelled stating he did not have the time or money for surgery, but he would consider surgery later. (R. 149-50).

### 2. Dr. Knott - Consulting Examination

Greer's first consultative examination, at the request of the state disability examiners, occurred on February 6, 1998, by Dr. A.P. Knott. (R. 158). Greer informed Dr. Knott he did not use an assistive device. (*Id.*). Dr. Knott examined Greer and found he could dress and undress and slowly get on and off of the examination table. (R. 159). Greer's gait was abnormal because both feet are everted to 20 degrees - Greer explained he walks this way to balance himself. (*Id.*). He could not walk on his heels and toes and was unable to squat. (*Id.*). Greer had a full range of motion in all joints of his upper extremities and normal fine

4

finger dexterity and gross manipulation. (R. 160). He also had full range of motion in all joints of the lower extremities except his hips, ankles, and knees. (R. 161). Dr. Knott diagnosed Greer with 1) degenerative arthritis of both hip joints, moderate to severe, 2) degenerative arthritis of both knees, 3) hypertension, treated and not controlled, control advised. (*Id.*).

### 3. Dr. Gerber - Radiologist

On March 12, 1998, Radiologist Samuel T. Gerber, M.D. submitted an x-ray report on Greer's knees and hips. The x-ray of Greer's knees showed a slight narrowing of the right and left medial knee joint compartments and a spur at the superior anterior aspect of the right and left patella. (R. 163). The x-ray of his hips showed evidence of his previous bilateral hip pinning arthroplasty and some narrowing of the right and left hip joint spaces. (*Id.*).

### 4. Fantus Clinic

On March 16, 1998, Greer was seen at Fantus Clinic and the high blood pressure clinic. (R. 166-67). He was walking with a cane intermittently and advised that prior to total hip replacement surgery, he needed to get his high blood pressure under control. (R. 166). He was also advised to stop using alcohol and given medication. (R. 166-67).

### 5. Dr. Rios - Consulting Examination

Greer's second consultative examination, at the request of the state disability examiners, occurred on May 30, 1998 with Dr. Alvaro Rios. (R. 168). Greer reported he did not need an assistive device for ambulation. (R. 169). Dr. Rios found a painless full range

5

of motion of all joints except for both hips. (*Id.*). Greer's back was non-tender with a full range of motion. (R. 170). Greer had an antalgic gait with a broad base; however, Dr. Rios opined Greer should be able to ambulate any distance without the use of an assistive device. (*Id.*). Greer had minor difficulty getting on and off the examination table, but had no difficulty tandem walking, walking on toes, or walking on heels. Greer was unable to squat and rise and hop on one leg. (*Id.*). Dr. Rios concluded Greer had bilateral hip tenderness with decreased range of motion more severe on the left and hypertension without end organ damage. (*Id.*).

### 6. State Agency Physicians

On April 9, 1998, medical consultant, Dr. F. Paul LaFata reviewed Greer's medical records and completed a Residual Physical Functional Capacity Assessment ("RFC") concluding Greer could occasionally lift twenty pounds, frequently lift ten pounds, stand and/or walk six hours in an eight-hour workday, and periodically alternate between sitting and standing to relieve pain and discomfort. (R. 174-81). Dr. LaFata also found Greer had occasional limitations in climbing, balancing, stooping, kneeling, crouching, and crawling, and should avoid unprotected heights due to his balancing difficulties. (R. 176, 178). As evidence for his conclusion, Dr. LaFata noted Greer's history of degenerate arthritis in both hips and both knees, wearing braces on both knees, not using an assistive device, walking up to two blocks, abnormal gait, reduced range of motion in lower extremities, and high blood pressure. (R. 175, 181). A second state agency physician, Dr. Charles Kenney affirmed Dr.

LaFata's assessment on June 9, 1998 after reviewing the evidence and assessment. (R. 174).

### 7. Dr. Kopplin

Greer submitted additional medical records to the ALJ prior to the March 1999 hearing. Progress notes from an October 19, 1998 and June 1, 1998 outpatient visit note his exam was unchanged and his medications were renewed. (R. 185-86). Greer was advised he would not be scheduled for surgery until he was off alcohol and his hypertension was controlled. (R. 185). A musculoskeletal defects or fractures questionnaire completed by Dr. Kopplin, an orthopedist with CCH, on December 21, 1998 indicates Greer has atrophy, weakness or swelling, deformity, pain, and Greer walks with a cane. (R. 188-89). Dr. Kopplin diagnosed Greer with chronic degenerative joint disease and a reduced range of hip motion. (R. 188). Dr. Kopplin opined Greer's complaints of pain were reasonably related to his impairments, his condition was deteriorating, and he needs a hip replacement. (R. 189). Progress notes from a March 15, 1999 outpatient visit indicate Greer was scheduled for surgery on his left hip on August 9, 1999. (R. 190).

### C. The ALJ's Decision

On October 29, 1999, ALJ Robert T. Karmgard determined Greer was not entitled to a period of disability or disability insurance benefits or for supplemental security income. (R. 12-21). In reaching this conclusion, the ALJ engaged in the five-step analysis required by SSA regulations. 20 C.F.R. §§ 416.920, 404.1520. The ALJ assessed each step of the

analysis, finding Greer not disabled because he could perform a significant number of sedentary jobs in the national economy, notwithstanding his impairments. (R. 19-20). Although the ALJ concluded Greer met steps one, two, and four because Greer was not engaged in substantial gainful activity, he had a severe impairment, and he could not return to any past relevant work, the ALJ did not find Greer's allegations of disabling symptoms and limitations fully credible. (R. 13, 18, 20).

At step three, the ALJ concluded disability could not be established because Greer's condition did not meet the level of severity contemplated by Regulation 4, Subpart P, Appendix 1. (R. 13). Specifically, the ALJ found no clear evidence of significant joint space narrowing or significant bony destruction on x-ray with an associated "markedly" limiting ability to walk or stand during the entire relevant period, thus not meeting the standard of Listing 1.03A. (*Id.*). Furthermore, with regards to Greer's RFC, the ALJ concluded Greer's impairments only preclude him from the following work-related activities:

> lifting up to 10 pounds at a time more than occasionally or lifting or carrying articles like docket files, ledgers, and small tools more than frequently; standing and/or walking for no more than a combined total of 2 hours in an eight-hour workday, and for more than brief periods of 5 to 10 minutes on each occasion, with a cane being used for ambulation; sitting for up to 6 hours in an eight hour workday with normal breaks, but must be allowed to alternate between sitting and standing positions at intervals of approximately one hour for a period of 5 to 10 minutes on each such occasion; squatting, climbing of ladders, ropes or scaffolds; more than occasional balancing, stooping, kneeling, crouching, crawling; more than occasional climbing of stairs and ramps; working in environments with exposure to unprotected heights and excavations, exposed moving parts, or dangerous machinery.

(R. 13-14). The ALJ thoroughly supported his finding by discussing Greer's alleged

symptoms; the medical evidence regarding hypertension, chronic knee pain, and hip pain; Greer's physical and consultative examinations and treatment records; lack of evidence of mental disorder; and Greer's daily living activities. (R. 14-18). Additionally, Greer's treatment has been routine and conservative in nature and Greer was not prescribed any narcotic based pain relieving medications despite his allegations of pain. (R. 18). Finally, the ALJ expressed no treating or examining source imposed greater limitations upon Greer than those determined by the ALJ. (*Id.*).

At step four, the ALJ determined Greer was unable to return to any past relevant work. (*Id.*). Therefore, after the burden shifted to the Commissioner at step five, the ALJ looked to Medical-Vocational Rules 201.27, 201.28, and the testimony of the Vocational Expert ("VE") to determine whether a significant number of jobs remain in the economy which Greer can perform. (R. 18-19).

Following the ALJ's decision, Greer requested review by the Appeals Council. On April 7, 2001, the Appeals Council denied Greer's request for review, thus the ALJ's decision stands and became the final decision of the Commissioner. (R. 4).

Currently before this Court are Greer's and the Commissioner's motions for summary judgment. Greer contends the ALJ's decision to deny him benefits was contrary to law and was not supported by substantial evidence. Oral argument was held May 14, 2002. For the reasons stated herein, Greer's motion is denied and the Commissioner's decision is affirmed.

## II. LEGAL STANDARDS

Judicial review of a Commissioner's final decision is governed by 42 U.S.C. § 405(g) which provides the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." Substantial evidence is "such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). In other words, the ALJ's findings must be supported by more than a mere scintilla of the evidence. *Id.*

A reviewing court may not decide facts anew, reweigh the evidence, or substitute its own judgment for that of the Commissioner. *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995). Rather, judicial review is limited to determining whether the ALJ applied the correct legal standards in reaching its decision and whether there is substantial evidence in the record to support the findings. 42 U.S.C. § 405(g); *Scivally v. Sullivan*, 966 F.2d 1070, 1075 (7th Cir. 1992). The SSA gives a court the power to enter a judgment "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a hearing." 42 U.S.C. § 405(g).

In order to be entitled to DIB under Title II of the SSA the claimant must establish a "disability" as defined by the Social Security Act. The same is true to qualify for SSI under Title XVI of the SSA. *Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 1997). To establish a "disability" the claimant must show he is suffering from a medically determinable physical or mental impairment which can be expected to result in death or, which has lasted or can be

expected to last for at least twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Additionally, an individual shall be considered disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work." 42 U.S.C. §§ 423 (d)(2)(A), 1382c(a)(3)(B).

The Social Security Regulations provide a five-step process to determine whether a claimant has established a "disability." 20 C.F.R. § 404.1520. The process is sequential; if the ALJ finds that the claimant is not disabled at any step in the process, the analysis ends. *Id.* The ALJ must inquire: 1) whether the claimant is still working; 2) whether the claimant has a severe impairment; 3) whether the claimant's impairment meets or equals a listed impairment; 4) if the claimant does not suffer from a listed impairment, whether he can perform past relevant work; and 5) whether the claimant is capable of performing any work in the national economy. *Id.*

## III. ANALYSIS

The issues presented are: 1) what Listing to apply, the pre or post February 19, 2002 final rules; and 2) whether the ALJ's decision that Greer did not meet Listing 1.03A was supported by substantial evidence.

### A.   The ALJ's Decision is Not Contrary to Law

Greer argues the ALJ's decision is contrary to law because the ALJ concluded Greer was not disabled based on Listing 1.03A, the listing in effect prior to February 19, 2002. 20

11

C.F.R. Pt. 404, Subpt. P., App.1, §1.03A. In November 2001, the Commissioner published final rules ("final rules") revising the medical criteria in the Listing of Impairments used to evaluate musculoskeletal impairments. 66 Fed. Reg. 58,010 (2001). These new final rules, Listing Section 1.02A, became effective February 19, 2002. *Id.* The Commissioner argues Listing 1.03A applies. The Court agrees with the Commissioner and holds Listing 1.03A applies to this case.

The Commissioner's final rules make clear the revised musculoskeletal listings only apply to claims pending at the administrative level on or after the effective date and do not apply to claims currently pending in federal court. *Id.* at 58,011 (stating "With respect to claims in which we have made a final decision, and that are pending judicial review in Federal court, we expect that the court's review of the commissioner's final decision would be made in accordance with the rules in effect at the time of the final decision"). "Courts grant an agency's interpretation of its own regulations considerable legal leeway." *Barnhart v. Walton*, 122 S.Ct. 1265, 1269 (2002). Here, the Commissioner interprets this phrase to mean Listing 1.03A applies to Greer's claim because a final decision was made in this case prior to the effective date of the final rules. This Court agrees. Greer received a final decision in this matter on April 7, 2001 (R. 4) and filed his complaint in this Court on May 3, 2001. Therefore, because a final decision was made pending judicial review in federal court prior to the effective date (Feb. 19, 2002) of the final rules, this Court must review the ALJ's decision in accordance with the rules in effect at the time of the final decision, namely

Listing 1.03A.

## B. The ALJ's Decision was Supported by Substantial Evidence

Greer contends the ALJ erred at Step Three in concluding his impairments did not meet or equal any of those listed in Subpart P. Specifically, he submits he met Listing 1.03A. 20 C.F.R. Pt. 404, Subpt. P., App.1, §1.03A. Greer also contends the ALJ mistakenly relied upon the opinions of the two non-treating, non-examining physicians.

In making a decision, the ALJ must articulate his analysis of the evidence. *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). The ALJ is not required to address every piece of evidence or testimony, but must provide some glimpse into his reasoning. *Id.* Where an ALJ denies benefits, he must build an accurate and logical bridge from the evidence to his conclusion. *Id.*

The main issue presented is whether Greer meets the requirements for a finding of disability based upon the Listing of Impairments Section 1.03A for arthritis of a weight-bearing joint. 20 C.F.R. Pt. 404, Subpt. P., App.1, §1.03A. A claimant is eligible for benefits if he has an impairment, or combination of impairments, which meets or equals an impairment found in the Listing of Impairments. 20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. Pt. 404, Subpt. P, App. 1; *Maggard v. Apfel*, 167 F.3d 376, 379 (7th Cir. 1999).

A claimant may demonstrate his impairments are presumptively disabling by 1) meeting the specific criteria described in the Listing; 20 C.F.R. §§ 404.1525(a), 416.925(a) or 2) showing his impairments are accompanied by findings equal in severity to those

described in a section of the Listing. 20 C.F.R. §§ 404.1526, 416.926; *Maggard*, 167 F.3d at 380. To meet or equal a listed impairment, the applicant must satisfy all of the criteria of the listed impairment. *Maggard*, 167 F.3d at 380. The claimant also bears the burden of proving his condition meets or equals the listed impairment. *Id.*

Substantial evidence in the record supports the ALJ's decision that Greer did not meet all of the requirements of 1.03A. Listing 1.03A provides:

> Arthritis of a major weight-bearing joint (due to any cause):
>
> With history of persistent joint pain and stiffness with signs of marked l imitation of motion or abnormal motion of the affected joint on current physical examination. With:
>
> A. Gross anatomical deformity of the hip or knee (e.g. sublaxation, contracture, bony or fibrous ankylosis, instability) supported by X-ray evidence of either significant joint space narrowing or significant bony destruction and markedly limiting ability to walk or stand.

20 C.F.R. Pt. 404, Subpt. P., App.1, §1.03A. The parties agree Greer has arthritis of a major weight-bearing joint with a history of persistent joint pain and stiffness with signs of marked limitation of motion or abnormal motion of the affected joint on current physical examination. Therefore, the only dispute is over subpart A.

Greer argues both his knees and hips satisfy the Listing because he has x-ray evidence of significant joint space narrowing found at Record pages 150 and 153 and a markedly limited ability to walk or stand. In contrast, the ALJ found "no clear evidence of significant joint space narrowing or significant bony destruction on X-ray with an associated 'markedly' limiting ability to walk or stand during the entire relevant period." R. 13. To reach this

14

conclusion, the ALJ relied on the medical evidence in the record and specifically looked to x-ray evidence establishing a *slight* narrowing of the medial knee joint compartment bilaterally and *some* narrowing of both hip joint spaces. R. 14-18, 163. Furthermore, the radiology report the ALJ relied on in making this finding was dated March 1998 (R. 163), while the Outpatient Progress Notes Greer relied upon are dated March 1997 and October 1996 and make no mention of joint space narrowing. R. 150, 153. Therefore, the ALJ relied on the more up-to-date x-ray in assessing slight knee and some hip joint narrowing.

The ALJ also looked to the medical evidence and testimony regarding Greer's daily life and ambulation. Greer can function in daily life. He can leave home alone and rides the bus. R. 131. In fact, he had no trouble taking the train to the hearing, although he did have to stop four times because he was in pain. R. 51. Greer also does his own laundry once a week and grocery shops twice a month. R. 130. He carries his own groceries, and at times, does his own cooking. R. 54-55.

Greer testified he used a cane since March 1998 (R. 46); however, he told both consultative examiners in January and May 1998 he did not need an assistive device for ambulation. R. 158, 169. Dr. Rios also opined Greer was able to walk without a cane (R. 170) and Greer testified he was able to walk half a block or a block without his cane. R. 51-52; 57-58. Dr. Kopplin's report indicates Greer uses a cane for ambulation but did not elaborate on how often or if it was required. R. 189.

Dr. Kopplin's report did find Greer suffers from atrophy, weakness or swelling,

15

deformity, and pain; however, at no time did he opine Greer's impairments met the Listing. R. 188-89. Nor did the reviewing state agency physicians determine Greer's impairments met or equaled any Listing. R. 79-80, 174-81, 197-98, 202-03. Finally, the Seventh Circuit has held an ALJ may rely upon the state agency physician's opinion to determine eligibility because the physician was designated by the Secretary to determine medical equivalence. *Scott v. Sullivan*, 898 F.2d 519, 524 (7th Cir. 1990).

Despite this, Greer argues the ALJ did not give appropriate weight to the opinions of his treating physicians in determining whether or not he was disabled. Greer's doctors did report some abnormal examination findings, and as noted by the ALJ, they did not opine Plaintiff was incapable of performing even a significantly restricted range of sedentary work. R. 17-18. The ALJ noted the objective medical evidence demonstrated Greer had a reduced ability to walk and stand (R. 16); accordingly, he limited Greer to work requiring no more than two hours of standing in an eight-hour workday and for no more than brief periods of five to ten minutes on each occasion. R. 13-14. The ALJ also determined Greer would need to use a cane for ambulation. R. 14. Notwithstanding these and other significant limitation which the ALJ found to be appropriate, the VE testified Plaintiff would be capable of performing a significant number of jobs in the Chicago metropolitan area.[1] R. 69-74. The

---

[1] Greer's argues he cannot perform sedentary work because he cannot maintain sufficient concentration or attention to meet the minimum requirements of work. This argument is rejected. The ALJ found no evidence of any mental disorder relying on the mental status examination conducted in May 1998. R. 17. That exam showed no deficiencies or abnormalities; normal mood and affect; average intellect; and memory, insight, judgment, and abstract reasoning all within the normal limits. R. 170. Greer testified he had concentration

16

ALJ thoroughly analyzed the medical and other evidence; therefore, substantial evidence existed and the ALJ's decision is affirmed. *See Dixon*, 270 F.3d 1177-78 (rejecting argument ALJ played doctor where he thoroughly discussed all of the relevant medical evidence).

The ALJ also considered the combination of Greer's impairments and concluded the level of severity does not equal that contemplated for any of the Appendix 1 impairments. R. 13. Once again, the ALJ relied on Greer's alleged symptoms, the medical evidence of hypertension, knee pain, and hip pain, the treating and consultative examinations, and Greer's daily living activities to reach this conclusion. R. 13-18.

Because the ALJ articulated his analysis of the evidence, provided more than a glimpse into his reasoning, and built an accurate and logical bridge from the evidence to his conclusion, the ALJ's decision is supported by substantial evidence. *Dixon*, 270 F.3d at 1176.

---

problems only "sometimes." R. 54. Furthermore, Greer stated none of his medications caused him drowsiness except for the medication prescribed to help him sleep. R. 62-63.

## IV. CONCLUSION

The ALJ's decision is not contrary to law and is supported by substantial evidence. For the reasons set forth in this opinion, **Claimant's motion for summary judgment is denied and the Commissioner's motion for summary judgment is granted and the Commissioner's decision finding Claimant not disabled is affirmed.** The Clerk of the Court is instructed, pursuant to Federal Rule of Civil Procedure 58, to enter judgment in favor of Defendant.

**SO ORDERED THIS 28th DAY OF MAY, 2002.**

_Morton Denlow_
**MORTON DENLOW**
**United States Magistrate Judge**

**Copies mailed to:**

Mary Elizabeth Kopko
McBreen and Kopko
1525 East 53rd Street, Suite 709
Chicago, Illinois 60615
(773) 752-2526

Kurt N. Lindland
Assistant United States Attorney
219 South Dearborn Street, 5th Floor
Chicago, Illinois 60604
(312) 353-4163

Kathryn A. Beverly
Assistant Regional Counsel
200 West Adams Street, 30th Floor
Chicago, Illinois 60606
(312) 353-8244

Attorney for Plaintiff

Attorneys for Defendant